Anthony V. Rippa (Utah Bar No. 09594)
5095 Glendon Street
Murray UT 84123
Phone: (385) 775-8745
rippalaw@gmail.com

*Counsel for Defendant Samuel B. Parker*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

351 S. W. Temple, Salt Lake City, Utah 84101

| | |
|---|---|
| ALEXIS WILKINS, | **MOTION TO DISMISS** |
| Plaintiff, | Case No. 2:25-CV-00987-RJS |
| v. | District Judge: Hon. Robert J. Shelby |
| SAMUEL B. PARKER, | Magistrate: Cecilia M. Romero |
| Defendant. | |

COMES NOW Defendant Samuel B. Parker, by and through counsel, and pursuant to Fed. R. Civ. P. 12 hereby moves the Court to dismiss Plaintiff's Complaint against him.

## I. STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

This case arises from alleged defamatory tweets made online about Alexis Wilkins ("Plaintiff") who is a citizen and resident of Tennessee, by Samuel B. Parker ("Defendant") who is a citizen and resident of Washington. Plaintiff is a famous American country singer and the girlfriend of FBI director Kash Patel. Defendant was not in Utah when the alleged tweets were posted, and the tweets were not directed at anyone in Utah. On October 31, 2025, Plaintiff filed suit against Defendant in Utah while he was living in Washington. Plaintiff subsequently located Defendant in Washington, and on February 4, 2026, served him at his home in Washington.

Defendant moves the Court to dismiss the Complaint pursuant to Rule 12(b)(2) because (1) there is no jurisdiction under Utah's long arm statute - Defendant does not have "significant minimal contacts" with Utah and did not perform any of the acts enumerated in the statute (2) the Court does not have general personal jurisdiction because Defendant is not a citizen of Utah, was not served in Utah, and did not consent to jurisdiction in Utah, and (3) the Court does not have specific personal jurisdiction because Defendant has no "minimum contacts" with Utah that gave rise to Plaintiff's claims, and the exercise of jurisdiction would offend traditional notions of fair play and substantial justice and be unreasonable under the circumstances of this case.

Defendant also moves the Court to dismiss the Complaint pursuant to Rule 12(b)(3) because Utah is not the proper venue to adjudicate Plaintiff's claims.  Defendant does not reside within the judicial district of Utah, the events material to Plaintiff's claim did not occur in Utah, and Defendant was not subject to personal jurisdiction when the action was commenced.

## II. RECITATION OF RELEVANT FACTS

**A. Defendant is not a citizen of Utah and has no minimum contacts with Utah**

1.  Plaintiff alleges that Defendant is "a resident and citizen of the State of Utah."  Cmplt. at ¶ 3.

2.  Plaintiff alleges that "Defendant is subject to personal jurisdiction pursuant to Utah Code Ann. § 78B-3-205 because Defendant resides and transacts business within this District." Cmplt. at ¶ 5.

3.  Defendant does not reside, work, or transact business in Utah.  Exhibit 1 (Declaration of Samuel B. Parker) at ¶ 4.

4.  Defendant's vehicle is not registered in Utah.  *Id*. at ¶ 5.

5.  Defendant does not vote in Utah and has not voted in Utah since 2018.  *Id*. at ¶ 6.

6.  Defendant does not own property in Utah.  *Id*. at ¶ 7.

7.  Defendant does not have a bank account in Utah.  *Id*. at ¶ 8.

8.  Defendant does not receive health benefits in Utah.  *Id*. at ¶ 9.

### B. Defendant is a citizen of Washington and has minimum contacts with Washington

9.  Defendant lives, resides, and works in Washington.  *Id*. at ¶ 10.

10. Defendant's vehicle is registered in Washington.  *Id*. at ¶ 12.

11. Defendant is registered to vote in Washington.  *Id*. at ¶ 13.

12. Defendant lives with and cares for his elderly parents, one of whom has Parkinson's disease, in Washington.  *Id*.  at ¶ 11.

13. Defendant banks in Washington.  *Id*. at ¶ 14.

14. Defendant received health benefits in Washington.  *Id*. at ¶ 15.

15. Defendant has a license to sell health and life insurance in Washington.  *Id*. at ¶ 16.

16. Defendant is in training to sell insurance in Washington.  *Id*. at ¶ 17.

17. Defendant previously lived in Utah but moved to Washington in October 2021.  *Id*. at ¶ 18.

18. Since that time Defendant traveled to Utah twice for the purpose of visiting family, most recently in September 2024.  *Id*. at ¶ 19.

19. Plaintiff filed suit on October 31, 2025, while Defendant was physically located in Washington, and about four years after Defendant moved from Utah to Washington.  *Id*. at ¶ 20.

### C. Defendant did not purposefully direct the complained-of tweets at anyone in Utah

20. Defendant has two X (formerly "Twitter") accounts called "@BasedSamParker" and "@SamParkerSenate."  *Id.* at ¶ 23.

*21.* X is an online non-geographically specific social media platform wherein users may post comments ("tweets") about almost any subject, accessible by anyone anywhere in the world with an internet connection where X is not censored or banned.

22. As a social media influencer Defendant exercised his constitutional right to free speech by using that platform to post comments ("tweets") regarding public figures and matters of public interest, and in so doing make his views and opinions known and engage with other users regarding those public figures and matters of public interest. *Id*. at ¶ 24.

23. Defendant's tweets were public and accessible by anyone regardless of their location. *Id.* at ¶ 25.

24. In September 2023 Defendant enrolled in X's ad monetization program for the purpose of creating additional income while recovering from a long illness. *Id.* at ¶ 26.

25. At no time did Defendant intentionally target or solicit residents of Utah or any other specific state. Solicitations of funds were made to the public at large. *Id.* at ¶ 27-28.

26. According to the Complaint, the tweets that are the subject matter of this suit began on February 23, 2025, while Defendant was living in Washington. *Id*. at ¶ 29. Cmplt. at ¶ 11.

27. The tweets that are the subject matter of this suit were not posted from Utah, or directed at anyone in Utah. *Id.* at ¶ 30.

28. Defendant's tweets voiced his opinions about public and political figures such as Alexis Wilkins, Kash Patel, Benjamin Netanyahu, and others, who are located in Washington D.C., Virginia, Israel, and other places, and about matters of public interest e.g. the Epstein files, TPUSA, PragerU, The Daily Wire, Islam, Zionism, US/Israel relations. Christianity, and American Heritage. *Id.* at ¶ 31.

**D. Plaintiff filed suit in Utah when Defendant was living in Washington**

29. On October 31, 2025, Plaintiff filed suit in Utah.

30. On October 31, 2025, Defendant was physically located and living in Washington. *Id.* at ¶ 20.

31. Plaintiff was unable to locate Defendant in Utah for the purpose of affecting service.

32. Plaintiff obtained an extension of time to serve Defendant and eventually located him at his home in Washington.

33. Plaintiff subsequently served Defendant in Washington. *Id*. at ¶ 22.

34. To appear for proceedings in this case Defendant would have to travel several hundred miles from his home in Washington, through Oregon and Idaho, to Utah. This would pose a significant financial and emotional burden to Defendant because he lacks the funds to comfortably pay for transport, accommodation, and food in Utah, and he is currently caring for his elderly parents (one of whom has Parkinson's disease) in Washington. *Id*. at ¶ 32.

### III. LEGAL STANDARD AND SUPPORTING AUTHORITIES

*Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

Under Rule 12(b)(2) a party may move the court to dismiss a complaint for lack of personal jurisdiction. The plaintiff "bears the burden of establishing personal jurisdiction"[1] but need "only make a prima facie showing."[2] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[3] "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's

---

[1] *Shrader v. Biddinger*, 633 F. 3d 1235, 1239 (10th Cir. 2011).
[2] *Behagen v. Amateur Basketball Ass'n*, 744 F. 2d 731, 733 (10th Cir. 1984).
[3] *Id*.

prima facie showing is sufficient notwithstanding the contrary presentation [] by the moving party."[4]

"[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing."[5]

A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction, and by doing so "the Court does not convert the motion into one for summary judgment."[6]

A party preserves it right to file a Rule 12(b) motion to dismiss, and the right is not waived provided that the party asserts the defense in a responsive pleading.[7]

### The Nonresident Jurisdiction Act

Utah's long arm statute (the Nonresident Jurisdiction Act) confers jurisdiction only if a defendant has "significant minimal contacts" with Utah provided the assertion of jurisdiction is "permitted by the due process clause of the Fourteenth Amendment."  It also confers jurisdiction where a defendant does any of the acts enumerated in the statute e.g. transacting business in Utah, causing injury in Utah, or owning property in Utah.  See Utah Code § 78B-3-201 et seq.

### Due Process under the Fourteenth Amendment

When a nonresident defendant disputes personal jurisdiction in a diversity action such as this one, the "plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

---

[4] *Id*.

[5] *Grupo Dataflux v. Atlas Glob. Grp.*, L.P., 541 U.S. 567, 569 (2004).

[6] *Flynn v. Ohio Building Restoration, Inc.*, 260 F. Supp. 2d 156, 161 (D.D.C. 2003).

[7] *Stjernholm v. Peterson*, 83 F. 3d 347, 349 (10th Cir.), cert. denied, 519 U.S. 930 (1996). See also *Blessing v. Chandrasekhar*, No. 2:20-CV-16, 2020 U.S. Dist. LEXIS 111115 , 2020 WL 3477021 at * 2 (E.D. Ky. June 25, 2020) (holding that filing a notice of appearance did not waive a personal jurisdiction defense where the defendants included the defense in their first responsive pleading (a motion to dismiss) and there was a short time frame (two weeks) between the appearance filing and the motion to dismiss.

Amendment."[8]  The court's personal jurisdiction inquiry under state law therefore "collapses . . . into the more general 'due process' standard."[9]  Due Process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[10]  For the court to exercise personal jurisdiction in accord with due process, a defendant must have sufficient "minimum contacts" with the forum state.[11]  "That is, the contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there[]'" so as not to "offend traditional notions of fair play and substantial justice."[12]

The United States Supreme Court has stated that there are "two types of personal jurisdiction: 'general' (sometimes called 'all purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."[13]

*General (All Purpose) Personal Jurisdiction*

Where a defendant is subject to general jurisdiction a court may "hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state."[14] However, "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State."[15]  Examples of when an individual noncorporate defendant is subject to the state's general jurisdiction are when he is "found" within the state, or is domiciled

---

[8] *Far West Cap., Inc. v. Towne*, 46 F. 3d 1071, 1074 (10th Cir. 1995).

[9] *Rusakiewicz v. Lowe*, 556 F. 3d 1095, 1100 (10th Cir. 2009).

[10] *XMission, L.C. v. Fluent LLC*, 955 F. 3d 833, 839 (10th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)).

[11] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

[12] *Fluent*, 955 F.3d at 839-40 (first quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); and then quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F. 3d 1063, 1070 (10th Cir. 2008)).

[13] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1779-80 (2017) (quoting *Goodyear Dunlop Tires Opera tions, S.A. v. Brown*, 564 U.S. 915, 918, 131 S. Ct. 2846 (2011)).

[14] *XMission, L.C. v. PureHealth Rsch.*, 105 F. 4th 1300, 1308 (10th Cir. 2024) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017)).

[15] *PureHealth Rsch.*, 105 F. 4th 1300, 1308 (10th Cir. 2024) (quoting *Bristol-Myers Squibb*, 582 U.S. at 262). See also *Diamler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014).

in the state.[16]  A person is subject to general jurisdiction within a state if his contacts with the state are so "continuous and systematic" that the person is essentially "at home" in the state.[17]

*Specific (Case Linked) Personal Jurisdiction*

To exercise specific personal jurisdiction over a nonresident party consistent with due process "defendants must have 'minimum contacts' with the forum state, meaning defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[18] The relationship must arise from contacts the defendant himself creates with the forum; the plaintiff's unilateral contacts cannot establish jurisdiction.[19]

The minimum contacts test for specific personal jurisdiction has two requirements: (1) a defendant must have "purposefully directed[20] its activities at residents of the forum state," and (2) the plaintiff's injuries must arise out of the defendant's forum-related activities."[21] As the Tenth Circuit has explained, the forum contact must not be the result of "random, fortuitous, or attenuated contacts" or the unilateral activity of another party.[22]

"If the defendant's actions create sufficient minimum contacts, the court must then determine whether the exercise of personal jurisdiction over the nonresident defendant offends

---

[16] In *Daimler* the Supreme Court held that a state has general jurisdiction over any defendant that is "at home" in the state. *Id*. According to *Daimler*, an individual is "at home" in their place of domicile. *Id*.

[17] *Old Republic*, 877 F.3d at 904.

[18] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985).

[19] *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ("the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum.").

[20] Also referred to sometimes by courts as "purposeful availment." *Dudnikov*, 514 F.3d at 1071.

[21] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F. 3d 1223, 1229 (10th Cir. 2020).

[22] *Dudnikov.,* 514 F.3d at 1071 *citing Burger King,* 471 U.S. at 475, 105 S. Ct. 2174.

"traditional notions of fair play and substantial justice." [23] Implicit in this inquiry is whether the exercise of personal jurisdiction is "reasonable" under all the circumstances of the case.[24]

*Rule 12(b)(3) Motion to Dismiss for Improper Venue*

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal due to improper venue.

In a diversity action such as this one, 28 U.S.C. § 1391(b) grants the court venue in: (1) a judicial district where any defendant resides . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

To review the propriety of venue under § 1391(b)(2), the court "conduct[s] a two-part analysis."[25] "First, [the court] examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."[26] "Second, [the court] determine[s] whether substantial 'events material to those claims occurred' in the forum district."[27] "The substantiality requirement is satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims."[28]

Under 28 U.S.C. § 1406(a) the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

---

[23] *Bulletproof Techs., Inc., v. Navitaire, Inc.*, No. 2:03-CV-00428 PGC, 2005 WL 2265701, at *2 (D. Utah Aug. 29, 2005) (quoting *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113 (1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

[24] *Id.*; *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F. 3d 1086, 1095 (10th Cir. 1998).

[25] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F. 3d 1153, 1166 (10th Cir. 2010).

[26] *Id.*

[27] *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F. 3d 353, 357 (2d Cir. 2005)).

[28] *Id.* (quoting *Jenkins Brick Co. v. Bremer*, 321 F. 3d 1366, 1372 (11th Cir. 2003)).

## IV. ARGUMENT

The Court lacks personal jurisdiction over Defendant under Utah's long arm statute, and under common-law principles of general and specific jurisdiction. Further, Utah is an improper venue for the adjudication of Plaintiff's claims against Defendant.

**A. The Utah long arm statute does not confer jurisdiction over Defendant.**

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F. 3d 1071, 1074 (10th Cir. 1995). There is no applicable federal statute in this case that confers personal jurisdiction. Utah's long arm statute - the Nonresident Jurisdiction Act - therefore applies.[29] Utah Code Section 78B-3-201 states in pertinent part:

> [T]he public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who, through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. . . . The provisions of this part . . . should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.

Utah Code Section 78B-3-205 states in pertinent part:

> [A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty;
> (4) the ownership, use, or possession of any real estate situated in this state; [and]

---

[29] Utah Code Section 78B-3-201 et seq.

(5) contracting to insure any person, property, or risk located within this state at the time of contracting.

In the instant case, the Court does not have jurisdiction over Defendant under the Nonresident Jurisdiction Act.

First, Defendant has no "*significant* minimal contacts" with Utah pursuant to subsection 201.  Defendant's contacts with Utah are insignificant.  He lived in Utah prior to October of 2021, after which time he moved his life and home to Washington, where he has lived and worked ever since.  He has traveled to Utah only twice since then, temporarily, to visit family.  Like many people Defendant has family in other states, who he occasionally visits.  These contacts are not *significant* contacts sufficient to confer jurisdiction under the Act.

Second, Defendant did not do any of the acts enumerated in subsection 205.  Defendant did not transact any business in Utah,  contract to supply services or goods in Utah, cause any injury within Utah, own or use property in Utah, or contract to insure any person, property, or risk located in Utah.

**B. The court does not have general (all-purpose) personal jurisdiction over Defendant.**

In the context of an individual noncorporate defendant the Court looks to whether the defendant is domiciled and therefore "at home" in the forum state, and thus whether he may be considered a citizen of the forum state.

"When assessing the citizenship of a person [the court] look[s] to the individual's domicile."[30] "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."[31] "[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to

---

[30] *Middleton v. Stephenson*, 749 F. 3d 1197, 1200 (10th Cir. 2014) (holding that "[f]or purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state.")
[31] *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).

be determined with reference to the facts as they existed at the time of filing."[32]  "[I]n other words, domicile consists of 'reside[nce]' plus an 'inten[t] to remain there indefinitely.'" [33]  In the case of *Middleton v. Stephenson*, 749 F. 3d 1197 (10th Cir. 2014) the Tenth Circuit Court of Appeals held that,

> When it comes to determining a person's domicile for diversity-jurisdiction purposes, a district court should consider the totality of the circumstances . . . It's an all-things-considered approach, and any number of factors might shed light on the subject in any given case. *See, e.g.,* Wright et al., *supra,* § 3612, at 536–41 (listing "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity"). [34]

The Court has no general jurisdiction over Defendant because he is not a citizen of Utah. He is not domiciled in Utah.  He is domiciled in, and a citizen of, Washington.  Defendant was living and domiciled in Washington when Plaintiff filed the Complaint.   Under the "totality of the circumstances," and considering "all things" and "any number of factors," it can safely be said that Defendant is domiciled in and a citizen of Washington, not Utah.[35]

Applying the *Middleton* factors:  Defendant's residence is in Washington and he was physically located and living in Washington at the time of filing;  He is registered to vote in Washington;  He does not own property in Utah;  He rents his home in Washington;  He has no bank accounts in Utah;  He banks in Washington;  He is registered to pay taxes in Washington; He works in Washington;  His business activities are in Washington;  He is licensed to drive in

---

[32] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70, 124 S. Ct. 1920, 158 L.Ed.2d 866 (2004).

[33] *Middleton*, 749 F.3d at 1200.

[34] *Middleton v. Stephenson*, 749 F.3d 1197, 1200–01 (10th Cir. 2014) (citing *See Gadlin v. Sybron Int'l Corp.,* 222 F.3d 797, 799 (10th Cir.2000). *See also Wilson v. IHC Health Servs., Inc.*, No. 2:12CV835, 2013 WL 1341401, at *2 (D. Utah Apr. 3, 2013).

[35] Exhibit 1 (Declaration of Samuel B. Parker).

Washington;  His vehicle is registered in Washington;  His entire "human life and activity" is located in Washington, not Utah.  The only activity related to Utah that Defendant has engaged in since leaving in 2021 - before Plaintiff filed suit in Utah in 2025 - is occasionally visiting family there.  This is not "continuous and systematic" contact such that he may be considered "at home" in Utah.[36]

To summarize, the Court has no general personal jurisdiction over Defendant because, when Plaintiff filed suit, Defendant was not domiciled in Utah, he was not found and served in Utah, and he did not consent to jurisdiction in Utah.

**C. The court does not have specific (case linked) personal jurisdiction over Defendant.**

For the reasons stated above Defendant also does not have the required minimum contacts for the Court to assert specific jurisdiction over him, and Plaintiff's claims do not arise out of or relate to Defendant's contacts with Utah, which are limited to occasionally visiting family members since he left Utah in 2021.  His "conduct and connection with" Utah is therefore not "such that he should reasonably anticipate being hale into court there."[37]

Posting tweets on X is also not sufficient to permit the Court to exercise specific personal jurisdiction over Defendant merely because people in Utah may have read the tweets.  One component of the minimum contacts test is that a party must have "purposefully directed"[38] its activities at residents of the forum state.  The case of *XMission L.C. v. Fluent LLC*, 955 F. 3d 833 (10th Cir. 2020) is apposite.  That case was an appeal from this Court.  The Tenth Circuit Court of Appeals affirmed the Hon. Judge Shelby's decision granting the defendant's Rule 12(b)(2) motion for lack of personal jurisdiction in the context of internet messaging.[39]  The Court stated,

---

[36] *Old Republic*, 877 F. 3d at 904
[37] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985).
[38] *Dudnikov*, 514 F. 3d at 1071.
[39] D.C. No. 2:18-CV-00182-RJS-PMW.

> Purposeful direction (sometimes referred to as purposeful availment) . . . requires that a defendant have deliberately . . . engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed [itself] of the privilege of conducting business there . . . The requirement ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction.

*Id*. at 840-841 (internal quotation marks omitted).

The court also stated,

> Purposeful direction may. . . be established . . . when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state . . . The plaintiff must show (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state.

*Id*. at 841 (internal quotation marks omitted).

Further,

> The unique aspect of the Internet that creates challenging issues regarding personal jurisdiction is that in the mass-marketing Internet context the marketer ordinarily does not know the physical location of the recipient of the message . . . This court's leading opinion in that context is *Shrader*. In *Shrader* we observed that Internet activities such as mass emailing, website hosting, and Internet posting are "peculiarly non-territorial" because "the internet operates 'in' every state regardless of where the user is physically located," 633 F.3d at 1240, and "when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction," id. (internal quotation marks omitted). We cautioned that if courts are to conclude that, as a general matter, "a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed"—essentially subjecting them to nationwide jurisdiction—"then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist." Id. (internal quotation marks omitted). *Shrader* explained that therefore "it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there" . . . Addressing websites such as Internet forums, we said that **<u>"merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed. . . . Rather, . . . postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message</u>**."

> *Shrader*, 633 F.3d at 1244 . . . With respect to mass emails, *Shrader* counsels that specific jurisdiction is proper over a sender only if the plaintiff shows that the sender had knowledge that the offending emails were going to a specific State . . . Other courts have adopted a similar approach. See *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F. 3d 796, 802 (7th Cir. 2014) (personal jurisdiction requires more than "simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there").

*Id*. at 844-846 (internal quotation marks omitted) (Emphasis Added).

The recent Sixth Circuit case of *Blessing v. Chandrasekhar*, 988 F. 3d 889 (6th Cir. 2021)[40] is equally apposite. In that case some students in Kentucky sued two out-of-state defendants (one in California and the other in New Jersey) for allegedly offensive Twitter comments they made about the students' activities at a rally in Washington D.C. *Id*. at 892-893. The students filed their suit in federal court in Kentucky. *Id*. at 893. The defendants moved to dismiss the complaint for lack of personal jurisdiction. *Id*. The students argued the defendants had waived jurisdiction by filing a notice of appearance two weeks before filing the motion to dismiss. *Id*.

The district court dismissed the complaint for lack of personal jurisdiction, holding that the defense was not waived and that exercising jurisdiction would offend the Constitution. *Id*. at 894. The Court of Appeals affirmed. In regard the waiver argument the court held that,

> Nothing in Rule 12 contemplates that an attorney's entry of a notice of appearance on a defendant's behalf amounts to a waiver of a Rule 12 defense. Nor would it make much sense if it did, because the notice is not a response to the complaint.

Further,

> A defendant need not file a special appearance to preserve her personal jurisdiction defense. Rather, a defendant must comply with Rule 12, which requires only that she include her defenses in her first responsive pleading . . .

---

[40] Appeal from Civil No. 2:20-CV-16, 2020 U.S. Dist. LEXIS 111115 , 2020 WL 3477021 at * 2 (E.D. Ky. June 25, 2020)

*Id*. at 898-899 (internal quotation marks omitted).

In regard to the jurisdictional argument the court observed that,

> The plaintiffs do not point to a single case in which a court extended personal jurisdiction based on a defendant's allegedly tortious postings on social media. The Sixth Circuit cases on which the plaintiffs rely all involved out-of-state defendants who had sent numerous tortious communications directly to plaintiffs in the forum state . . . we have held that personal jurisdiction is absent when the communication was not specifically directed at the forum state . . . Neither Griffin nor Chandrasekhar had any preexisting relationship with the plaintiffs, business or otherwise. They also took no affirmative steps to direct any communications to the plaintiffs or to anyone else in Kentucky, and they did not otherwise avail themselves of the benefits and protections of Kentucky's laws. There is no evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally.

*Id*. at 905-906 (internal quotation marks omitted).

The Court of Appeals thus affirmed the district court ruling that out-of-state Twitter users are not subject to jurisdiction where tweets are directed at a national audience without any specific targeting of the forum state. *Id*. at 907.

In the instant case Defendant's tweets were not intentionally, deliberately, or purposefully directed or aimed at residents of Utah. The act of posting tweets that were as viewable to X users in Utah as anywhere else in the country, and in the world, does not mean Defendant availed himself of the privilege of conducting business in Utah when he posted them, any more than he availed himself of the privilege of conducting business in Washington, Tennessee, or a foreign country. Mere foreseeability that his tweets may cause damage to Plaintiff's reputation in Utah is insufficient. There is no assertion or evidence that the brunt of the injury was felt in Utah, or that Defendant had a knowledge that it would be. Internet tweets are non-territorial and X operates in every state, and many countries, regardless of where the user is physically located. If this Court were to conclude that Defendant's mere act of placing information on the Internet subjects him to personal jurisdiction in each state in which the information is accessed, including

Utah, then the defense of personal jurisdiction, in the sense that a state has geographically limited judicial power, would no longer exist. Such a holding would clearly be unconstitutional. Merely posting information (comments regarding political figures and matters of public interest) on the internet does not, by itself, subject the poster to personal jurisdiction wherever that information may be accessed. Personal jurisdiction requires more than simply operating an interactive X account accessible in the forum state and sending tweets to people who may happen to live there. Indeed tweets – unlike the emails that were the subject matter of the *XMission* case that still held in favor of there being no personal jurisdiction  – are not really sent to anyone. They are only posted for users to see. They are not purposefully *sent* to those users.

Since Defendant lacks the required minimum contacts, the Court need not concern itself with the next stage of the inquiry, which is "whether the exercise of personal jurisdiction over the nonresident defendant offends traditional notions of fair play and substantial justice,"[41] and whether the exercise of personal jurisdiction is "reasonable" under all the circumstances of the case.[42] It should go without saying that for the Court to exercise jurisdiction over Defendant under the circumstances of this case would be unfair, unjust, and unreasonable, and offensive to the Due Process and Full Faith and Credit clauses in the U.S. Constitution.[43]

However, even where a plaintiff satisfies the minimum contacts requirement, a defendant may still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."[44] Unreasonableness is assessed by

---

[41] *Bulletproof Tech., Inc. v. Navitaire, Inc.*, No. 2:03-CV-00428 PGC, 2005 WL 2265701 at *2 (D. Utah Aug. 29, 2005) (quoting *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113 (1987) (quoting *International Shoe Co. v. Washington.,* 326 U.S. 310, 316 (1945)).
[42] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F. 3d 1086, 1095 (10th Cir. 1998).
[43] The Full Faith and Credit Clause acts as a limitation on personal jurisdiction by requiring states to enforce valid judgments from other states, provided the originating court had proper jurisdiction. See *Chicago & Alton Railroad v. Wiggins Ferry Company*, 119 U.S. 615 (1887).
[44] *Burger King*, 471 U.S. at 477.

considering "(1) the burden on the defendant (2) the forum state's interest in resolving the dispute (3) the plaintiff's interest in receiving convenient and effective relief (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental social policies."[45]

In the instant case, even if there were minimum contacts, it would be unreasonable for the Court to assert jurisdiction over Defendant because it would be burdensome to do so. Defendant is domiciled in Washington where he takes care of his elderly and ailing parents. He would thus need to travel several hundred miles through Oregon and Idaho to appear in Utah, paying for transportation and accommodation along the way because he has no home or property in Utah. Utah has no particular interest in resolving the dispute because it does not involve Utah-based parties, or acts done in, or directed at, Utah. Plaintiff's interest in receiving convenient and effective relief is also not impaired by refiling the case in Washington where Defendant resides, because none of the evidence or witnesses are in Utah. Indeed, the burden on Defendant if he must to travel to Utah for discovery, evidentiary hearings, or trial, may also be inconvenient to Plaintiff if that burden causes delays and inefficiencies in the court proceedings. Plaintiff would have to register a judgment to collect on it outside of Utah, and there is a substantial risk that another state's court will not give it full faith and credit if Defendant satisfies the foreign court that this Court lacked personal jurisdiction over him. Efficiency and fundamental social policies are therefore better served by litigating the case in the forum where Defendant resides, especially when neither Defendant nor Plaintiff have any contacts with Utah that are relevant to the case, and there is no evidence, and no witnesses, in Utah.

---

[45] *Old Republic*, 877 F. 3d at 909; *OMI Holdings, Inc.*, 149 F. 3d at 1095.

To summarize, the Court has no specific personal jurisdiction over Defendant because, when Plaintiff filed suit, Defendant had no minimum contacts with Utah that are linked to Plaintiff's case, and even if he did the exercise of jurisdiction here would offend traditional notions of fair play and substantial justice, and be unreasonable under the circumstances of this case.

**D. Utah is an improper venue.**

Venue is improper in Utah because it is not the judicial district where Defendant resides, in which a substantial part of the events giving rise to Plaintiff's claim occurred, or in which Defendant was subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391(b). As already described above, Defendant resides in Washington, and he resided in Washington when Plaintiff filed suit. None of the events (the tweets) giving rise to Plaintiff's claim occurred in Utah. They occurred online, and as previously stated, merely posting tweets on the internet does not, by itself, subject the poster to personal jurisdiction wherever those tweets may be accessed. Personal jurisdiction requires more than simply operating an interactive X account accessible in the forum state and sending tweets to people who may happen to live there. The Court should therefore dismiss the Complaint or transfer it to the district court in which it could have been brought. 28 U.S.C. § 1406(a).

## V. CONCLUSION

For the foregoing reasons Defendant respectfully requests that the Court grant the motion and dismiss the Complaint for lack of personal jurisdiction and improper venue.

In the alternative, if the Court believes jurisdictional facts remain disputed, Defendant requests discovery and an evidentiary hearing before any ruling adverse to dismissal.

DATED this 17th day of April 2026.

/s/ *Anthony V. Rippa*
Anthony V. Rippa
*Counsel for Defendant Samuel B. Parker.*

Anthony V. Rippa (Utah Bar No. 09594)
5095 Glendon Street
Murray UT 84123
Phone: (385) 775-8745
rippalaw@gmail.com

*Counsel for Defendant Samuel B. Parker*

---

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

351 S. W. Temple, Salt Lake City, Utah 84101

---

| | |
|---|---|
| ALEXIS WILKINS, | **DECLARATION OF SAMUEL PARKER** |
| Plaintiff | Case No. 2:25-CV-00987-RJS |
| v. | District Judge: Hon. Robert J. Shelby |
| SAMUEL B. PARKER, | Magistrate: Cecilia M. Romero |
| Defendant. | |

---

1. I, Samuel B. Parker, state the following under penalty of perjury.

2. I am above the age of majority and competent to make this declaration.

3. I know the facts declared herein to be true of my own personal knowledge and belief.

4. I do not reside, work, or transact business in Utah.

5. My vehicle is not registered in Utah.

6. I do not vote in Utah and have not voted in Utah since 2018.

7. I do not own property in Utah.

8. I do not have a bank account in Utah.

9. I do not receive health benefits in Utah.

10. I live, reside, and work in Washington.

11. I live with and care for my elderly parents, one of whom has Parkinson's disease.

12. My vehicle is registered in Washington.

13. I am registered to vote in Washington.

14. I bank in Washington.

15. I received health benefits (Washington State Medicaid) in Washington.

16. I have a license to sell health and life insurance in Washington.

17. I am in training to sell insurance in Washington.

18. I previously lived in Utah but moved to Washington in October 2021.

19. Since that time I have traveled to Utah twice for the purpose of visiting family, most recently in September 2024.

20. Plaintiff filed suit on October 31, 2025, while I was physically located in Washington, about four years after I moved from Utah to Washington.

21. I was not served with a copy of the complaint in Utah.

22. On February 4, 2026, I was served with a copy of the complaint at my home in Washington.

23. I have two X (formerly "Twitter") accounts called "@BasedSamParker" and "@SamParkerSenate."

24. As a social media influencer I exercised my constitutional right to free speech by using that platform to post comments ("tweets") regarding public figures and matters of public interest, and in so doing make my views and opinions known and engage with other users regarding public figures and matters of public interest.

25. My tweets were public and accessible by anyone regardless of their location.

26. In September 2023 I enrolled in X's "ad monetization program" for the purpose of creating additional income from tweeting, and to support my tweeting, while recovering from a long illness.

27. At no time did I intentionally target or solicit residents of Utah or any other specific state. Solicitations of funds were made to the public at large.

28. I did not specifically solicit anyone in Utah for money and to the best of my knowledge and belief I did not receive any money from anyone in Utah.

29. According to the Complaint, the tweets that are the subject matter of the suit began on February 23, 2025, while I was living in Washington.

30. The tweets that are the subject matter of this suit were not posted from Utah, or directed at anyone in Utah.

31. My tweets voiced my opinions about public and political figures such as Alexis Wilkins, Kash Patel, Benjamin Netanyahu, and others, who are located in Washington D.C., Virginia, Israel, and other places, and about matters of public interest e.g. the Epstein files, TPUSA, PragerU, The Daily Wire, Islam, Zionism, US/Israel relations, Christianity, and American heritage.

32. To appear for proceedings in this case I would have to travel several hundred miles from my home in Washington, through Oregon and Idaho, to Utah. This would pose a significant financial and emotional burden to me, and to my parents, because I am lacking in sufficient funds to comfortably pay for transport, accommodation, and food in Utah, and I am currently caring for my elderly and ailing parents, one of whom has Parkinson's disease.

33. 1declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.[46]

EXECUTED on this 16th day of April 2026.

/s/ *Samuel B. Parker*
Samuel B. Parker

*Signed with permission of, and e-signature authorized via email by, Samuel B. Parker on April 16, 2026.*

---

[46] "That statute [28 USC § 1746] authorizes parties to submit unsworn declarations in lieu of affidavits provided that the declarations state that they are 'true and correct' and are made 'under the penalty of perjury.'" *Vazirqbqdi v. Denver Health and Hospital Authority*, 782 Fed. Appx. 681, 687 (l0th Cir. 2019).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of April 2026, the foregoing MOTION TO DISMISS and EXHIBIT # 1 was filed electronically via the District of Utah ECF system, is available for viewing and downloading, and will be sent electronically to the counsel who are registered participants identified on the Notice of Electronic Filing, and was sent to the following via electronic mail:

Ammon Clemens Esq.
133 West Northwood Lane, Ste. 203
Provo UT 84604
ammon.clemens@gmail.com

*Counsel for Plaintiff Alexis Wilkins*

/s/ *Anthony Rippa*
Anthony Rippa
*Counsel for Defendant Samuel B. Parker*