Ammon P. Clemens, Utah Bar # 18885
KEEN LAW OFFICES LLC
39 S 400 W
Orem, Utah 84058
Phone: 801-374-5336
Email: ammonc@keen.law

Jason C. Greaves, Limited Appearance
Peter J. Abernathy, Limited Appearance
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
        peter@binnall.com

*Counsel for Plaintiff Alexis Wilkins*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALEXIS WILKINS,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMUEL B. PARKER,<br><br>*Defendant.* | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:25-cv-987<br><br>Hon. Robert J. Shelby |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

BACKGROUND ......................................................................................................1

ARGUMENT ..........................................................................................................4

    I.   Personal Jurisdiction Exists Over Defendant in Utah. ...................................4

       a.    Personal jurisdiction in Utah complies with due process. ........................5

       b.    Defendant's actions implicate Utah's Nonresident Jurisdiction Act, and a sufficient nexus exists. ..............................................................................16

       c.    Ms. Wilkins seeks limited jurisdictional discovery. ...............................17

    II.  Venue is Proper in the District of Utah. ......................................................18

CONCLUSION .....................................................................................................20

CERTIFICATE OF SERVICE ................................................................................22

# TABLE OF AUTHORITIES

### Cases

*A.L. Enters., Inc. v. Sebron*,
No. 2:08-cv-536, 2008 WL 4356958 (D. Utah Sept. 17, 2008) (unpublished) ...........8

*Alfwear, Inc. v. IBKUL UBHOT Ltd.*,
No. 2:21-cv-00698, 2022 WL 3705483, at *6
(D. Utah Aug. 26, 2022) (unpublished)................................................................8, 19

*American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*,
710 F.2d 1449, 1454 n.2 (10th Cir. 1983) ................................................................4

*Behagen v. Amateur Basketball Ass'n*,
744 F.2d 731, 733 (10th Cir. 1984) ..........................................................................4

*Benton v. Cameco Corp.*,
375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005) ................5

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ...........................................................................12, 13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 477 (1985) ..................................................................................13, 14

*Calder v. Jones*,
465 U.S. 783, (1984) ............................................................................................7, 11

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509, 1515 (10th Cir. 1991) .....................................................................19

*Conlin Enter. Corp. v. Snews LLC*,
No. 2:07-cv-922, 2008 WL 803041, at *8
(D. Utah Mar. 24, 2008) (unpublished) ..................................................................13

*Dutcher v. Matheson*,
16 F. Supp. 3d 1327, 1339 (D. Utah 2014) .............................................................17

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153, 1165 (10th Cir. 2010) ...............................................................18, 19

*FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.,*
   No. 2:20-cv-00871, 2022 WL 79910, at *5
   (D. Utah Jan. 7, 2022) (unpublished) ....................................................................12

*Great Bowery v. Best Little Sites,*
   609 F. Supp. 3d 1240, 1253 (D. Utah 2022) ..........................................................14

*Grynberg v. Ivanhoe Energy, Inc.,*
   490 Fed. App'x. 86, 103 (10th Cir. 2012) ...............................................................18

*Hark'n Technologies, Inc. v. Orange Whip Fitness X, LLC,*
   No. 1:21-cv-00054, 2022 WL 3370637, at *4
   (D. Utah Aug. 16, 2022) (unpublished)...................................................................7

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770, (1984) ...............................................................................................7

*Kuenzle v. HTM Sport–Und Freizeitgerate AG,*
   102 F.3d 453, 456 (10th Cir. 1996) ........................................................................4

*Old Republic Ins. Co. v. Continental Motors, Inc.,*
   877 F.3d 895, 905 (10th Cir. 2017) ...............................................................7, 11, 12

*OMI Holdings v. Royal Ins. Co. of Can.,*
   149 F.3d 1086, 1091 (10th Cir. 1998) .........................................4, 6, 13, 14, 15, 16

*Prince v. Ward,*
   No. 2:17–cv–934, 2018 WL 705544, at 3 (D. Utah Feb. 2, 2018) (unpublished) ....15

*Pro Axess, Inc. v. Orlux Distrib.,*
   428 F.3d 1270, 1276 (10th Cir. 2005) ..........................................5, 6, 13, 14, 15, 16

*Rusakiewicz v. Lowe,*
   556 F.3d 1095, 1100 (10th Cir. 2009) .....................................................................5

*Shrader v. Biddinger,*
   633 F.3d 1235, 1241 (10th Cir. 2011) .....................................................................12

*SII MegaDiamond, Inc. v. Am. Superabrasives Corp.,*
   969 P.2d 430, 433 (Utah 1998)...............................................................................16

*Soma Med. Int'l v. Std. Cht. Bank,*
   196 F.3d 1292, 1297 (10th Cir. 1999) .....................................................................5

*Systems Designs, Inc. v. New Customware Co., Inc.,*
   248 F. Supp. 2d 1093, 1100 (D. Utah 2003) .......................................................6, 7

*Varex Imagin Corp. v. Jafari,*
No. 2:24-cv-796, 2026 WL 308809, at *2 (D. Utah Feb. 5, 2026) (unpublished)........17

*World–Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286, 297 (1980) ...............................................................................6

*XMission, L.C. v. Fluent LLC,*
   955 F.3d, 844—45 (10th Cir. 2020)...........................................................12

*Zoobuh, Inc. v. Savicom, Inc.,*
   No. 2:17–cv–01098, 2018 WL 2768665, at *5
   (D. Utah Jun. 8, 2018) (unpublished).......................................................11

### Statutes

28 U.S.C. § 1391(b)(2) ...................................................................................18

UTAH CODE § 78B-3-205(1), (3) ...................................................................5

UTAH CODE ANN. § 78B-3-201(3) (West 2008) ............................................5

Since at least 2018, Defendant, Samuel Parker, has attempted to profit from the people of Utah. Now that he has been called to account for his lies about Plaintiff, Alexis Wilkins, Defendant attempts to backpedal and sweep his connections to Utah under the rug. Notwithstanding his current living arrangements, Defendant purposefully availed himself of Utah's protections and continues to push his vitriol on Utah and its citizens. Defendant should not now be allowed to pretend that he did not intend his message to reach and affect Utahns.

## BACKGROUND

Defendant maintains two X (formerly Twitter) accounts: @BasedSamParker and @SamParkerSenate. Defendant created the @SamParkerSenate account for his failed run for a Utah seat in the United States Senate in February, 2016.[1] Both now and at the time Ms. Wilkins filed her Complaint in 2025, Defendant's @SamParkerSenate account prominently displayed slogans such as "100% Utahn" and "0% Outsider".[2] Defendant continues to use his @SamParkerSenate account to target the audience that he cultivated in Utah during his Senate run, as the account name implies.

Much of the content that Defendant posts on his @SamParkerSenate account directly addresses Utah and Utah issues, appearing to come from a current Utah

---

[1] Sam Parker (@SamParkerSenate) X, https://x.com/SamParkerSenate.
[2] Id.

1

resident concerned about the goings-on in the state. For example, on July 25, 2025,

Defendant used his @SamParkerSenate to post:

> "Today is Pioneer Day in Utah, a state holiday that commemorates the arrival of the Mormon Pioneers at the Great Salt Lake in 1847. It's celebrated with greater vigor than the 4th of July. Here's the story."[3]

On August 10, 2025, Defendant used his @SamParkerSenate account to post:

> "There are nearly the same number of Mormons in America as Jews. In fact, there are similar numbers between the 2 populations worldwide. Yet you don't see endless Mormon and Utah content dominating your feed. Why is that?"[4]

On November 10, 2025, Defendant used @SamParkerSenate to comment on

Utah's response and investigation of the Charlie Kirk assassination:

> "MASSIVE BLOW to the Charlie Kirk assassination narrative. Why did UVU lie? What else are they lying about? What 'civilian' is sitting around on a weekend in Utah County, 2 days after an assassination, & thinking 'hmmm, we should do an emergency pave-over of the crime scene.'?".[5]

On December 30, 2025, Defendant used @SamParkerSenate to post:

> "The bottom line, IMO, is that my fellow LDS folks are just too nice. They're allowing Utah to be overrun & fundamentally transformed, just like the rest of America—to avoid being called racists. The real estate market & politicians love the massive influx of new bodies, too."[6]

---

[3] Sam Parker (@SamParkerSenate) X (Jul. 25, 2025, 12:38 AM), https://x.com/SamParkerSenate/status/1948603825595843018.
[4] Sam Parker (@SamParkerSenate) X (Aug. 10, 2025, 8:58 PM), https://x.com/SamParkerSenate/status/1954709004913098812.
[5] Sam Parker (@SamParkerSenate) X (Nov. 10, 2025, 1:08 PM), https://x.com/SamParkerSenate/status/1987945388289187927.
[6] Sam Parker (@SamParkerSenate) X (Dec. 30, 2025, 10:33 AM), https://x.com/SamParkerSenate/status/2006025745798185202.

That same post by @SamParkerSenate on December 30, 2025, reposted another post by Defendant's @BasedSamParker account, which said:

> "Utah was founded & built White American & European Mormons. Utah is Mormon from the ground up. Literally. Even the road system, oriented around the Temples, is Mormon! Lol. How can Utah remain Utah if it's overrun by too many move-ins, migrants, immigrants & refugees of other [sic]".[7]

Both before and during this litigation, Defendant has used the @BasedSamParker and @SamParkerSenate accounts to spread vitriolic antisemitism. Defendant regularly quotes and reposts/retweets his @BasedSamParker account from his @SamParkerSenate account.

Defendant has used both of his X accounts to post false statements about Ms. Wilkins. On February 23, 2025, Defendant used both of his X accounts to post and re-post a series of falsehoods regarding Ms. Wilkins.[8] Compl. ¶¶ 11–24. In these posts, which Defendant labeled as his "investigation of Alexis Wilkins," Defendant accused Ms. Wilkins of being a foreign spy for Israel.[9] Accordingly, on October 31, 2025, Ms. Wilkins brought this case to hold Defendant accountable for his lies.

---

[7] *Id.*

[8] Sam Parker (@SamParkerSenate) X (Feb. 23, 2025, 11:17 PM), https://x.com/SamParkerSenate/status/1893877974350377235.

[9] *See id.*

## ARGUMENT

### I.    Personal Jurisdiction Exists Over Defendant in Utah.

Defendant's Motion attempts to portray this case as involving nothing more than geographically-neutral internet speech accessible from anywhere in the world. That characterization ignores the substantial record demonstrating that Defendant deliberately cultivated, maintained, and exploited a Utah-centered political identity and Utah audience for years, including throughout the period in which he published the defamatory statements at issue. Under both the Nonresident Jurisdiction Act and the Due Process Clause, this Court may properly exercise specific personal jurisdiction over Defendant.

When a defendant moves to dismiss a complaint based on lack of personal jurisdiction, the plaintiff must make a prima facie showing that personal jurisdiction exists. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)). The Tenth Circuit has clarified that "[t]he plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1091. In making this determination, courts must construe all factual disputes in the plaintiff's favor. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) (citing *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)).

Because Defendant resides out of state, Ms. Wilkins must demonstrate that specific personal jurisdiction exists over Defendant. This determination includes three-prongs: "(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process." *Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (quoting *Soma Med. Int'l v. Std. Cht. Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (alteration in original) (quotations omitted)). The Nonresident Jurisdiction Act extends jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment." UTAH CODE ANN. § 78B-3-201(3) (West 2008). The Act specifically authorizes jurisdiction over claims arising from "the transaction of any business within this state" and "the causing of any injury within this state whether tortious or by breach of warranty." UTAH CODE § 78B-3-205(1), (3). Because the Act is coextensive with federal due process requirements, the jurisdictional inquiry "collapses the Utah standard into the more general 'due process' standard for jurisdiction." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

### a. Personal jurisdiction in Utah complies with due process.

The due process inquiry is twofold. *Pro Axess*, 428 F.3d at 1276 (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005)). First, courts consider "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*

(quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Second, "if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Pro Axess*, 428 F.3d at 1276–77 (quoting *OMI*, 149 F.3d at 1091).

### 1. Defendant has sufficient minimum contacts with Utah.

Under the minimum contacts test, "[a] defendant's contacts are sufficient if 'the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.'" *Pro Axess*, 428 F.3d at 1277 (quoting *OMI*, 149 F.3d at 1091 (quotations, citations and emphasis omitted)). Here, Defendant's conduct satisfies this test.

In the context of operating an interactive website such as an X account, "courts that have evaluated these middle-ground cases typically look for 'something more.'" *Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093, 1100 (D. Utah 2003). "The inquiry revolves around a determination of whether or not the defendant purposefully direct[ed] its activities in a substantial way toward the forum state to find personal jurisdiction." *Id.* (citations omitted). Courts often look for "'deliberate and repeated' contacts with the forum, 'intentional targeting' of the forum, or a defendant's 'purposefully directing' its conduct towards the forum." *Id.* at 1102. In *New Customware*, while the defendant did not have deliberate and repeated contacts with Utah, it did target clients in Utah by tailoring its services to potential

6

Utah clients. *Id.* Therefore, the court found that this provided "an additional basis for jurisdiction." *Systems Designs,* 248 F. Supp. 2d at 1103.

The Tenth Circuit has since elaborated on this, discussing that the Supreme Court has provided "two frameworks in specific jurisdiction cases involving out-of-state media defendants' national distribution of their printed material: *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, (1984) (market exploitation) and *Calder v. Jones*, 465 U.S. 783, (1984) (harmful effects)." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017).

First, the market exploitation test from *Keeton*, as *Old Republic* described it, was met "[w]here ... [the defendant] has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 906 (quoting *Keeton*, 465 U.S. at 781). Under this framework, "an out-of-state defendant's continuous and deliberate exploitation of the forum state market may also satisfy the purposeful direction requirement." *Hark'n Technologies, Inc. v. Orange Whip Fitness X, LLC*, No. 1:21-cv-00054, 2022 WL 3370637, at *4 (D. Utah Aug. 16, 2022) (unpublished) (citing *Old Republic*, 877 F.3d at 906). Defendants "cannot expect to avail [themselves] of the benefits of the internet-created world market that [it] purposefully exploit[s] and profit[s] from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No. 2:21-cv-00698, 2022 WL 3705483, at *6 (D. Utah Aug. 26,

7

2022) (unpublished) (quoting *A.L. Enters., Inc. v. Sebron*, No. 2:08-cv-536, 2008 WL 4356958 (D. Utah Sept. 17, 2008) (unpublished)).

Here, Defendant makes a living as a "social media personality and maintains active donation links for people supporting his social media posts." Compl. ¶ 10. Defendant's main vehicle for these endeavors is his two X accounts. Defendant's accounts are undoubtedly targeted toward Utah. Therefore, it stands to reason that the donations Defendant seeks are primarily from Utah, as that is his primary audience.

Indeed, Defendant has had frequent contact with Utah and consistently availed himself of its laws since at least 2018. Defendant ran unsuccessfully for the Republican nomination for the United States Senate in Utah in 2018. Compl. ¶ 9. In February of that year, he created the X handle "@SamParkerSenate," and has maintained it ever since, even after he was eliminated at the Utah Republican Convention in April, 2018.[10] The banner image for this X handle states that Defendant is "100% Utahn," and "0% Utah Outsider."[11] Defendant uses this handle and a parallel account "@BasedSamParker," to sling outlandish, antisemitic conspiracy theories. Both accounts refer back to one another. Defendant frequently re-posts content from his "@BasedSamParker" account on his "@SamParkerSenate"

---

[10] Sam Parker (@SamParkerSenate) X, https://x.com/SamParkerSenate.
[11] Sam Parker (@SamParkerSenate) X, https://x.com/SamParkerSenate.

account. Both accounts link to a webpage, "flow.page/SamParkerSenate," which redirects users to numerous outlets to donate money to Defendant.[12]

From Defendant's maintenance of both accounts, it is reasonable to infer that he intends to market his ideas and content specifically to Utahns. During his failed Senate run, Defendant developed a devoted core audience in Utah. This is likely why his "@SamParkerSenate" account still specifically identifies him as "100% Utahn."[13] Even though Defendant has moved to Washington, he has used the online presence he established while actively campaigning for public office in Utah to raise donations.

There is nothing from either account to suggest that he has stopped directing his efforts at Utah. On the contrary, Defendant has continued to comment on Utah and Utah issues. For example, on December 30, 2025, Defendant used his @SamParkerSenate account to re-post from his @BasedSamParker account in which he claimed that Utah is departing from its "Mormon" heritage by allowing itself to be "overrun."[14] Similarly, on August 10, 2025, Defendant used @SamParkerSenate to re-post @BasedSamParker, in which he accused Jewish persons of "dominating your feed" because Mormons and Utahns are not represented online as much as Jewish

---

[12]      Sam      Parker      (@SamParkerSenate)      FLOW.PAGE, https://flow.page/SamParkerSenate.

[13] Sam Parker (@SamParkerSenate) X, https://x.com/SamParkerSenate.

[14]   Sam   Parker   (@SamParkerSenate)   X   (Dec.   30,   2025,   10:33   AM), https://x.com/SamParkerSenate/status/2006025745798185202.

people.[15] On July 25, 2025, Defendant posted in recognition of Pioneer Day, noting its importance to both Utah and the Church of Jesus Christ of Latter-Day Saints.[16]

Defendant's frequent mention of the Church of Jesus Christ of Latter-Day Saints in politics, culture, and society further suggests that he deliberately portrays himself as a Utah resident online. Defendant likely draws upon experiences of members of the Church of Jesus Christ of Latter-Day Saints (whom he erroneously calls "Mormons") because said Church is headquartered in Salt Lake City and Defendant desires to appeal to Utahns, many of whom are members of that Church. Notwithstanding his move to Washington, Defendant portrays himself online as though he were still a Utah resident, as evidenced by the language of his posts. Such behavior further suggests that Defendant purposefully directs his antisemitic activities at Utah.

In line with Defendant's antisemitic attacks is his attack against Ms. Wilkins. Defendant posted his defamatory thread against Ms. Wilkins on these same X accounts, falsely implying that Ms. Wilkins is secretly working on behalf of a foreign government, Israel, to compromise FBI Director Patel. Compl. ¶ 25.

In sum, Defendant's conduct illustrates "something more."[17] He did not simply post content on a passive website that anyone, anywhere could access. He specifically

---

[15] Sam Parker (@SamParkerSenate) X (Aug. 10, 2025, 8:58 PM), https://x.com/SamParkerSenate/status/1954709004913098812.
[16] Sam Parker (@SamParkerSenate) X (Jul. 25, 2025, 12:38 AM), https://x.com/SamParkerSenate/status/1948603825595843018.
[17] The standard first articulated in *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996) *affirmed* 126 F.3d 25 (2nd Cir. 1997).

tailored his social media channels to a Utah audience that he had previously cultivated while a resident of Utah. That is the entire purpose of having a separate X account, @SamParkerSenate, that Defendant specifically created for his political ambitions in Utah. It would not now be reasonable for the Court to allow Defendant to claim no connection with Utah while simultaneously pretending to be a Utahn online to cultivate and maintain an online following. Defendant's conduct in this case arose from those contacts with Utah. Defendant frequently makes inflammatory, oftentimes antisemitic remarks to his Utah audience in an attempt to collect donations from that audience. His conduct in this case fits right in line with that modus operandi: making an outlandish accusation to his Utah audience in order to obtain additional donations. Compl. ¶ 34. Defendant was essentially selling his content to Utah residents. *See id.* at ¶ 41 (explaining that Defendant defamed Ms. Wilkins to obtain personal profit).

Second, alternatively, courts may also apply the "harmful effects" test established in *Calder v. Jones. Old Republic*, 877 F.3d at 905 (citing *Calder*, 465 U.S. 783). This test has three elements: "(1) the defendant commits an intentional act, (2) the defendant's action is expressly aimed at the forum state, and (3) the defendant knows that the brunt of the injury will be felt in the forum state." *Zoobuh, Inc. v. Savicom, Inc.*, No. 2:17–cv–01098, 2018 WL 2768665, at *5 (D. Utah Jun. 8, 2018) (unpublished) (citing *Old Republic*, 877 F.3d at 907). "[C]ourts 'look to indications that [the] defendant deliberately directed its message at an audience in the forum state and intended to harm the plaintiff occurring primarily or particularly in the

11

forum state.'" *Id.* (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)); *see also FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.*, No. 2:20-cv-00871, 2022 WL 79910, at \*5 (D. Utah Jan. 7, 2022) (unpublished) ("The key attribute the court looks for is 'the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there.'" (quoting *Old Republic*, 877 F.3d at 908)).

Similarly to the market exploitation analysis, Defendant intentionally directed his social media posts toward a primary Utah-based audience. In doing so, because Defendant knew that his target audience was, in fact, Utah, he also intended Utah to be where Ms. Wilkins was ultimately harmed. Accordingly, under either test, Defendant has sufficient minimum contacts.

Defendant's cited cases do not change the foregoing conclusions. Defendant's reliance on *XMission, L.C. v. Fluent LLC*, 955 F.3d, 844—45 (10th Cir. 2020) and *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), is misplaced. Dkt. No. 22 at 13–16. Neither case involved a defendant who intentionally cultivated and maintained a forum-specific political identity.

In *XMission, L.C. v. Fluent LLC*, 955 F.3d, 844—45 (10th Cir. 2020), the Tenth Circuit rejected jurisdiction because the defendants merely transmitted generalized mass communications without specifically targeting Utah audiences. 955 F.3d at 844–46. The court emphasized that internet-based jurisdiction may exist where defendants intentionally direct conduct at a particular state. *Id.* Likewise, *Blessing* involved Twitter users with no preexisting relationship to the forum state and no

12

evidence that they directed communications toward Kentucky specifically. 988 F.3d at 905–06. The Sixth Circuit expressly noted that the defendants "took no affirmative steps" to direct communications toward Kentucky audiences. *Id.*

Defendant did the opposite here. Defendant affirmatively held himself out as a Utah political figure, utilized a Utah Senate campaign account, repeatedly commented on Utah issues, solicited support associated with his Utah identity, and disseminated the challenged statements through that Utah-centered account.

### 2.     *Exercising jurisdiction would be reasonable.*

"[A] determination that there are sufficient 'minimum contacts' with the forum state presumes that jurisdiction will not violate 'traditional notions of fair play and substantial justice.'" *Conlin Enter. Corp. v. Snews LLC*, No. 2:07-cv-922, 2008 WL 803041, at *8 (D. Utah Mar. 24, 2008) (unpublished) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The burden shifts to the defendant who "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). The Tenth Circuit considers five elements in this determination: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Axess*, 428 F.3d at 1279–80 (quoting *OMI*, 149 F.3d at 1095).

13

First, Defendant's burden is minimal. Defendant voluntarily operated extensive online political activities directed at Utah audiences for years. Modern litigation is routinely conducted electronically, substantially reducing any inconvenience associated with travel. And "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 474). Courts have also lessened the burden on defendants by "holding hearings through video conferencing software." *Great Bowery v. Best Little Sites*, 609 F. Supp. 3d 1240, 1253 (D. Utah 2022). Accordingly, this factor weighs in Ms. Wilkins's favor.

Second, Utah possesses a substantial interest in adjudicating disputes arising from conduct intentionally directed toward Utah political audiences and Utah public discourse. "Although less compelling, a state may also have an interest in adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents." *Id.* (quoting *OMI*, 149 F.3d at 1096). Here, Defendant's conduct, lying about Ms. Wilkins, affects Utah residents who were the intended audience of those lies. Therefore, this factor also weighs in Ms. Wilkins's favor.

Third, Plaintiff has a strong interest in obtaining convenient and effective relief in the forum of her choosing, which is substantially connected to Defendant's conduct. Minimally, this factor is neutral.

Fourth, exercising jurisdiction promotes judicial efficiency. "This factor asks 'whether the forum state is the most efficient place to litigate the dispute.'" *Pro Axess*,

14

428 F.3d at 1281 (quoting *OMI*, 149 F.3d at 1097). While Defendant asserts in conclusory fashion that no witnesses or evidence will be located in Utah, this ignores potential Utah residents who have viewed Defendant's defamatory posts, who are relevant as to Ms. Wilkins's favor. Candidly, however, evidence will likely be located all over the country. Therefore, this factor is, minimally, neutral.

Fifth, the final factor "focuses on whether the exercise of personal jurisdiction by the forum state affects the 'substantive social policy interests of other states or foreign nations.'" *Prince v. Ward*, No. 2:17–cv–934, 2018 WL 705544, at 3 (D. Utah Feb. 2, 2018) (unpublished) (quoting *OMI*, 149 F.3d at 1097). Here, the exercise of personal jurisdiction by the forum state would not affect the substantive social policy interests of other states in this defamation case because defamation has been federally defined in common law, and much, if not all, of the defenses derive from Supreme Court precedents that are binding on any court. Defendant has not made any argument to the contrary. *See id.* ("The Court finds no facts suggesting that the exercise of personal jurisdiction in Utah would affect the substantive social policy interests of any other state."). Thus, the final factor also weighs in Ms. Wilkins's favor.

In sum, because Defendant cannot illustrate that any of these factors weigh in his favor, he is unable to present a "compelling case" to satisfy his burden. Accordingly, Defendant purposefully directed substantial conduct toward Utah, Plaintiff's claims arise directly from those activities, and the exercise of personal jurisdiction fully comports with due process.

15

### b. Defendant's actions implicate Utah's Nonresident Jurisdiction Act, and a sufficient nexus exists.

Because jurisdiction over Defendant satisfies minimum contacts and due process, the exercise of jurisdiction also satisfies Utah's Nonresident Jurisdiction Act and creates a sufficient Nexus.

First, as to the Utah Nonresident Jurisdiction Act, "[t]he Utah Supreme Court has stated that 'any set of circumstances that satisfies due process will also satisfy the long-arm statute.'" *Pro Axess*, 428 F.3d at 1282 (quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)). "This is because the Utah legislature has declared that the long-arm statute must be interpreted broadly 'so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'" *Id.* (quoting UTAH CODE ANN. § 78-27-22).[18] Accordingly, because jurisdiction over Defendant satisfies due process, the exercise of jurisdiction also satisfies Utah's Nonresident Jurisdiction Act.

Second, as to a sufficient nexus, "[t]his is analogous to part of the minimum contacts due process analysis above." *Pro Axess*, 428 F.3d at 1282 (citing *OMI*, 149 F.3d at 1095). Therefore, because "[Defendant's] contacts with Utah fulfill[] the requirements of the minimum contacts due process analysis… the required nexus exists under state law." *Id.*

---

[18] UTAH CODE ANN. § 78-27-22 has since been renumbered as UTAH CODE ANN. § 78B-3-201.

Accordingly, because all three prongs are met, this Court has personal jurisdiction over Defendant.

### c. Ms. Wilkins seeks limited jurisdictional discovery.

To the extent that this Court believes that Ms. Wilkins has not already surpassed her burden, she respectfully requests that the Court permit limited jurisdictional discovery on the proportion and sources of his revenue that come from Utah. Through such narrowly tailored discovery, Ms. Wilkins will be able to further support the minimum contacts evidence, and it would go directly to the market exploitation theory of establishing personal jurisdiction, as discussed above. This request is not intended as a fishing expedition. Rather, the evidence already before the Court provides a good-faith basis to believe that Defendant specifically tailors his social media content to Utah audiences and profits directly from those Utah-focused posts. *See Varex Imagin Corp. v. Jafari*, No. 2:24-cv-796, 2026 WL 308809, at *2 (D. Utah Feb. 5, 2026) (unpublished) ("Here, the court finds jurisdictional discovery regarding Jafari's trips to Utah will assist in determining whether the court can exercise personal jurisdiction over Jafari. This is more than mere speculation. Therefore, the court will grant discovery as to the first category sought by Varex."). As this District has noted: "A refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1339 (D. Utah 2014) (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed.

17

App'x. 86, 103 (10th Cir. 2012)). Here, Ms. Wilkins would plainly be prejudiced if this case were dismissed before she had the opportunity to challenge Defendant's well-established connections with Utah.

## II.    Venue is Proper in the District of Utah.

Lastly, Defendant argues that dismissal is appropriate because venue in this District is improper. Defendant's venue argument fails largely for the same reasons that his argument against personal jurisdiction fails.

Here, venue is proper under 28 U.S.C. § 1391(b)(2), which permits suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "[V]enue is not limited to the district with the *most* substantial events or omissions." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (emphasis in original). As such, venue may be proper in multiple districts. *Id.* at 1166. In *Bartile Roofs*, the Tenth Circuit explained that courts must conduct a "two-part analysis," first examining the nature of the claims and then determining whether "substantial 'events material to those claims occurred'" in the district. *Id.* The Tenth Circuit further held that the substantiality inquiry is satisfied where there is a "close nexus" between the forum activities and the claims. *Id.* That standard is met here.

As discussed, Ms. Wilkins's claims arise directly from Defendant's repeated use of his Utah-focused "@SamParkerSenate" account to amplify and republish allegedly defamatory statements concerning Plaintiff. Defendant repeatedly reposted content from his "@BasedSamParker" account through the Utah-branded

18

"@SamParkerSenate" account that he created for Utah political purposes and continues to use to target Utah audiences. His posts were neither accidental nor geographically neutral. Defendant intentionally utilized the Utah political identity and Utah audience associated with the "@SamParkerSenate" account to disseminate the statements at issue. The forum, therefore, bears a direct and substantial connection to the operative events underlying Plaintiff's claims. And it was from this same X account that Defendant used to generate publicity in Utah and raise money from Utahns that he defamed Ms. Wilkins, as part of that plan. Accordingly, a nexus exists between Defendant's activities in Utah and his defamation of Ms. Wilkins, and Defendant's Motion should be denied.

And because venue is proper in Utah, transfer under § 1406(a) is unwarranted. Under a motion to transfer venue, "[t]he movant has the burden to show that the current forum is inconvenient." *Alfwear*, 2022 WL 3705483, at *10 (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)). "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Bartile Roofs*, 618 F.3d at 1168). Defendant does not make any substantive argument in favor of transfer. Therefore, he has not met his burden. This is especially true considering Defendant knowingly cultivated a Utah audience for years, maintained a Utah political identity after relocating to Washington, and deliberately used that Utah-centered platform to disseminate the statements at issue. Having intentionally invoked Utah's political sphere and Utah

19

audiences for personal and financial benefit, Defendant cannot now disclaim the foreseeable consequence of litigating in Utah.

## CONCLUSION

Defendant built a life and cultivated a following in Utah. After those efforts failed to deliver him a position in the United States Senate, Defendant relocated to Washington. Defendant not only selectively edited his defamatory publications about Ms. Wilkins to be wholly devoid of the truth, but he also now attempts to mislead this Court about his actual ties to his home state of Utah. It is a matter of fact that he did not dissolve his connections to Utah. He continued to spew vitriol to his followers in Utah and used that influence to spread malicious lies about Ms. Wilkins. Given his well-established contacts with Utah, this Court has personal jurisdiction over Defendant, and venue is proper. Accordingly, Ms. Wilkins respectfully requests that this Court deny Defendant's Motion in its entirety.

Dated: May 15, 2026                    Respectfully submitted,

                                       /s/ Jason C. Greaves
                                       Jason C. Greaves, Limited Appearance
                                       Peter Abernathy, Limited Appearance
                                       BINNALL LAW GROUP
                                       717 King Street, Suite 200
                                       Alexandria, Virginia 22314
                                       Phone: (703) 888-1943
                                       Fax: (703) 888-1930
                                       jason@binnall.com
                                       peter@binnall.com

                                       Ammon P. Clemens, Utah Bar # 18885
                                       KEEN LAW OFFICES LLC

20

39 S 400 W
Orem, Utah 84058
Phone: 801-374-5336
Email: ammonc@keen.law

*Counsel for Plaintiff Alexis Wilkins*

## CERTIFICATE OF SERVICE

I certify that on May 15, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason Greaves, Limited Appearance

*Counsel for Plaintiff Alexis Wilkins*